IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MISSOURI DEPARTMENT<br>OF SOCIAL SERVICES<br>Broadway State Office Building<br>221 W High Street<br>Jefferson City, MO 65101<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT<br>OF HEALTH AND HUMAN SERVICES<br>200 Independence Avenue, SW<br>Washington, DC 20201,<br><br>CENTERS FOR MEDICARE<br>AND MEDICAID SERVICES<br>200 Independence Avenue, SW<br>Washington, DC 20201,<br><br>SYLVIA MATHEWS BURWELL,<br>Secretary of the United States Department<br>of Health and Human Services, in her official capacity,<br>200 Independence Avenue, SW<br>Washington, DC 20201<br><br>      and<br><br>ANDREW M. SLAVITT<br>Acting Administrator for the Centers for<br>Medicare and Medicaid Services, in his official capacity,<br>200 Independence Avenue, SW<br>Washington, DC 20201,<br><br>      Defendants. | Civ. No. 1:15-cv-01329 |

**COMPLAINT FOR DECLARATORY RELIEF**

## INTRODUCTION

1. This case involves the amounts that a State Medicaid agency can pay to hospitals as so-called "disproportionate share hospital" or "DSH" payments without exceeding the hospital-specific DSH cap established by Section 1923(g) of the Social Security Act, 42 U.S.C. 1396r-4(g).  The specific issue is whether the Centers for Medicare & Medicaid Services ("CMS") can enforce its subregulatory guidance that "days, costs and revenues associated with patients that are eligible for Medicaid and also have private insurance should be included in the hospital-specific DSH limit."  This same issue is presented in *Texas Children's Hospital v. Burwell*, No. 14-cv-02060 (D.D.C.), currently pending in this Court.

2. On December 29, 2014, in the *Texas Children's* case, this Court enjoined Defendants "from enforcing, applying, or implementing" the above-referenced policy "pending further Order of this Court."  *Texas Children's Hosp. v. Burwell*, No. 14-cv-02060, Doc. No. 19 (D.D.C. Dec. 29, 2014).

3. As a result of this Order, the Plaintiff Missouri Department of Social Services ("DSS," "Missouri," or "the State") informed the Centers for Medicare & Medicaid Services ("CMS") that it planned to redo the independent audit of its 2011 DSH payments to assess whether payments to any hospitals exceed the limit in light of the Court's Order.

4. Despite this Court's injunction, CMS has informed Missouri that it will continue to apply the subregulatory guidance to Missouri's Medicaid program and that "CMS may disallow federal financial participation if a state does not comply with the policy[.]"

5. The State faces the threat of the Defendants disallowing federal funding for the State's Medicaid program if it does not comply with the guidance.  The State seeks declaratory

relief that Defendants are prohibited from "from enforcing, applying, or implementing FAQ No. 33" with respect to Missouri's Medicaid program.

## JURISDICTION AND VENUE

6. This action arises under 28 U.S.C. § 2201, and federal and common law.

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361 and pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper under 28 U.S.C. § 1391(e)(1).

9. There presently exists an actual controversy between the Plaintiff and the Defendants requiring resolution by this Court.

## PARTIES

10. Plaintiff Missouri Department of Social Services ("DSS," "Missouri," or "the State") is the "single State agency" responsible for administration of the State of Missouri's participation in the federal Medicaid program. *See* Social Security Act ("SSA") § 1902(a)(5), 42 U.S.C. § 1396a(a)(5).

11. Defendant United States Department of Health and Human Services ("HHS") is the federal agency responsible for administering the Medicaid program.

12. Defendant Centers for Medicare and Medicaid Services ("CMS") is the agency within HHS immediately responsible for overseeing the Medicaid program at the federal level.

13. Defendant Sylvia Mathews Burwell is the Secretary of HHS and is responsible for the overall administration of the agency. She is sued in her official capacity.

14. Defendant Andrew M. Slavitt is the Acting Administrator for CMS and is responsible for overseeing the agency. He is sued in his official capacity.

## STATUTORY AND REGULATORY BACKGROUND

**The Medicaid Program and Medicaid Funding**

15. Medicaid is a cooperative federal-state program under which the federal government provides financial assistance to participating States in connection with the provision of health care to lower-income individuals and families. Under the federal Medicaid statute (Title XIX of the SSA, 42 U.S.C. §§ 1396 et seq.), States are entitled to reimbursement for a specified percentage of the costs they incur in providing health care to their Medicaid-eligible populations. *See* SSA § 1903, 42 U.S.C. § 1396b(a).

16. A State participating in the Medicaid program must obtain CMS's approval of a state plan for medical assistance. *See* SSA § 1902, § 1396a. The State receives federal reimbursement for its expenditures on medical assistance under its state plan. *See* SSA § 1903, § 1396b.

17. The federal government's share of a State's expenditures under the Medicaid program is called "federal financial participation" ("FFP").

18. The federal Medicaid statute and related regulations establish the procedures by which States receive FFP for their Medicaid expenditures.

**Disproportionate Share Hospital Payments and the Hospital-Specific Limit**

19. The Medicaid statute requires States to make payments to hospitals that "take into account (in a manner consistent with section 1923) the situation of hospitals which serve a disproportionate number of low-income patients with special needs." *See* SSA § 1902(a)(13)(A)(iv), § 1396a(a)(13)(A)(iv); *see also* SSA § 1923, 42 U.S.C. § 1396r-4. These "disproportionate share hospital" ("DSH") payments are available to hospitals that serve a disproportionate share of Medicaid patients.

20. The total of the State's aggregate DSH payments to hospitals is limited to a state-specific allotment. The state allotments are listed in Section 1923(f) of the SSA, § 1396r-4(f).

21. In addition, the Medicaid statute includes a hospital-specific DSH payment cap. Specifically, DSH payments to a hospital cannot exceed the following:

> the costs incurred during the year of furnishing hospital services (as determined by the Secretary and net of payments under this title, other than under this section, and by uninsured patients) by the hospital to individuals who either are eligible for medical assistance under the State plan or have no health insurance (or other source of third party coverage) for services provided during the year. For purposes of the preceding sentence, payments made to a hospital for services provided to indigent patients made by a State or a unit of local government within a State shall not be considered to be a source of third party payment.

SSA § 1923(g)(1)(A), § 1396r-4(g)(1)(A).

22. The Medicaid statute requires States to annually audit their DSH payments to, among other things, confirm that hospitals did not receive payments in excess of the hospital-specific payment cap established by Section 1923(g)(1)(A). SSA § 1923(j), § 1396r-4(j).

23. If an audit reveals a payment to a hospital in excess of its hospital-specific DSH payment cap, the federal share of that overpayment must be returned to the federal government. *See* 42 C.F.R. § 455.304(a)(2). The federal share of Medicaid overpayments made to hospitals and other providers must generally be returned to the federal government within one year of being discovered by a State. SSA § 1903(d)(2), § 1396b(d)(2).

24. If a State recoups a DSH payment made to a hospital in excess of the hospital-specific DSH payment limit, that recoupment may create additional space in the State's DSH payment allotment and allow the State to make increased payment(s) to other hospital(s) that have not reached their hospital-specific DSH payment limits.

25. Missouri state regulations specify that "overpayments that are recouped from hospitals as the result of the final DSH adjustment will be redistributed to hospitals that are

shown to have a total shortfall," based on the final audit. Mo. Code Regs. Ann. tit. 13, § 70-15.220(7)(B). A "shortfall" refers to the "hospital-specific DSH limit in excess of the total amount a hospital has been paid (including all DSH payments)." *Id.* § 70-15.220(10)(S).

26. In 2008, CMS finalized rules implementing the DSH audit and reporting requirements. 73 Fed. Reg. 77,904 (Dec. 19, 2008). Among other things, States must report each hospital's "total uncompensated care costs", defined as follows:

> The total annual uncompensated care cost equals the total cost of care for furnishing inpatient hospital and outpatient hospital services to Medicaid eligible individuals and to individuals with no source of third party coverage for the hospital services they receive less the sum of regular Medicaid [fee-for-service] rate payments, Medicaid managed care organization payments, supplemental/enhanced Medicaid payments, uninsured revenues, and Section 1011 payments for inpatient and outpatient hospital services. This should equal the sum of paragraphs (c)(9),(c)(12), and (c)(13) subtracted from the sum of paragraphs (c)(10) and (c)(14) of this section.

42 C.F.R. § 447.299(c)(16).

27. CMS provided for a transition period to the new audit and reporting regime, such that 2011 is the first year for which CMS will require that funds be recouped based on findings in the audits. For years before 2011, findings in state reports and audits "will not be given weight except to the extent that the findings draw into question the reasonableness of State uncompensated care cost estimates used for calculations of prospective DSH payments for Medicaid State plan year 2011 and thereafter." *See* 42 C.F.R. § 455.304(e).

28. State audits of DSH payments "must be completed by the last day of the Federal fiscal year ending three years from the end of the Medicaid State plan rate year under audit," and "[c]ompleted audit reports must be submitted to CMS no later than 90 days after completion.

Post-audit adjustments based on claims for the Medicaid State plan rate year paid subsequent to the audit date, if any, must be submitted in the quarter the claim was paid." *Id.* § 455.304(b).

29. On January 20, 2010, CMS issued subregulatory "Frequently Asked Questions" ("FAQ") regarding the new audit and reporting requirements. *See* CMS, Additional Information on the DSH Reporting and Auditing Requirement, http://www.medicaid.gov/medicaid-chip-program-information/by-topics/financing-and-reimbursement/downloads/additionalinformationonthedshreporting.pdf (last visited Aug. 13, 2015). FAQ No. 33 addressed the meaning of uncompensated costs, for purposes of calculating the hospital-specific DSH payment limit:

> 33. Would days, costs, and revenues associated with patients that have both Medicaid and private insurance coverage (such as Blue Cross) also be included in the calculation of the . . . DSH limit in the same way States include days, costs and revenues associated with individuals dually eligible for Medicaid and Medicare?
>
> Days, cost[s], and revenues associated with patients that are dually eligible for Medicaid and private insurance should be included in the calculation of the Medicaid inpatient utilization rate (MIUR) for the purposes of determining a hospital eligible to receive DSH payments. Section 1923(g)(1) does not contain an exclusion for individuals eligible for Medicaid and also enrolled in private health insurance. Therefore, days, costs, and revenues associated with patients that are eligible for Medicaid and also have private insurance should be included in the calculation of the hospital-specific DSH limit.

*Id.* at 18.

## FACTUAL BACKGROUND

*Texas Children's Hospital v. Burwell*

30. On December 5, 2014, Texas Children's Hospital and Seattle Children's Hospital (collectively, "the Children's Hospitals") sued seeking declaratory and injunctive relief to prevent CMS from implementing the policy announced in FAQ No. 33. The Children's

7

Hospitals challenged CMS's position that, in calculating a hospital's uncompensated costs for purposes of determining the hospital-specific DSH limit, "days, costs, and revenues associated with patients that are eligible for Medicaid and also have private insurance should be included in the calculation." The Children's Hospitals' complaint is attached hereto as Exhibit 1.

31. On December 29, 2014, in *Texas Children's Hospital v. Burwell*, No. 14-cv-02060, this Court granted the Children's Hospitals' motion for a preliminarily injunction prohibiting CMS from enforcing its policy that payments from private insurers for services to individuals dually enrolled in Medicaid and private insurance should be counted in calculating Medicaid uncompensated care payments to hospitals (called "Disproportionate Share Hospital" or "DSH payments"). A copy of the decision is attached hereto as Exhibit 2 and a copy of the court's injunction is attached hereto as Exhibit 3.

32. The injunction in *Texas Children's* prohibiting the Defendants from implementing FAQ No. 33 was not limited to any specific States. *See* Exhibits 2, 3. The Order read as follows:

> For the reasons stated in the accompanying Memorandum Opinion, it is hereby
> ORDERED that plaintiffs' motion for a preliminary injunction is GRANTED; and it is
> FURTHER ORDERED that Defendants are hereby ENJOINED from enforcing, applying, or implementing FAQ No. 33 pending further Order of this Court; and it is
> FURTHER ORDERED that Defendants shall immediately notify the Texas and Washington state Medicaid programs that, pending further order by the Court, the enforcement of FAQ No. 33 is enjoined and that Defendants will take no action to recoup any federal DSH funds provided to Texas and Washington based on a state's noncompliance with FAQ No. 33; and it is
> FURTHER ORDERED that any request to stay this Order pending appeal will be denied for the reasons stated in the accompanying Memorandum Opinion.
> SO ORDERED.

**Missouri's DSH Audit and Payments**

33. On December 23, 2014, five days before the decision in *Texas Children's*, Myers and Stauffer LC, DSS's outside auditor, completed the independent audit of Missouri's state fiscal year (SFY) 2011 DSH payments. *See* 42 C.F.R. Part 455, Subpart D. In so doing, Myers and Stauffer followed CMS's regulations and guidance governing DSH independent audits and payments, including FAQ No. 33's instruction that "days, costs, and revenues associated with patients that are eligible for Medicaid and also have private insurance should be included in the calculation of the hospital-specific DSH limit." Based in part on the policy in FAQ No. 33, this audit report concluded that Missouri made payments to several hospitals in excess of those hospitals' DSH payment limits.

34. On April 1, 2015, Dr. Joseph Parks, Director of MO HealthNet, wrote to Victoria Wachino, Director of CMS's Center for Medicaid and CHIP Services (CMCS), about the implications of the *Texas Children's* decision. In the letter, Dr. Parks stated that, unless it received guidance from CMS by May 1, 2015, Missouri planned to instruct its independent auditor, Myers and Stauffer LC, to redo the state fiscal year 2011 DSH audit to exclude all payments/revenues from private insurers in recalculating the hospital-specific DSH limits, in light of the decision in *Texas Children's*. Dr. Parks further explained that Myers and Stauffer LC would continue to include the costs of all services delivered to Medicaid enrollees, even for services subsequently paid by private insurers, in recalculating these hospital-specific DSH limits. Finally, Dr. Parks stated that the second independent audit would not be completed within the timeframe specified in CMS regulations. Dr. Parks' letter is attached hereto as Exhibit 4.

35.     On May 1, 2015, Timothy Hill, Deputy Director of CMCS, responded to Dr. Parks letter.  Mr. Hill stated that CMS was continuing to enforce its policy in FAQ No. 33, "except as to Washington and Texas. . . .  For all other states, including Missouri, CMS may disallow federal financial participation if a state does not comply with the policy articulated in FAQ No. 33."  Mr. Hill's letter further stated:

> The CMS will also continue to enforce compliance with the submission deadline for SPRY 2011 DSH audit as described in 42 CFR 455.304(b). If the state does not submit an audit that meets federal requirements, CMS may defer or disallow state claims for DSH federal financial participation until such time as the state submits a compliant audit. Additionally, if the SPRY 2011 audit findings identify any DSH payments exceeded documented hospital-specific DSH limits, these payments will be treated as provider overpayments that, pursuant to 42 CFR Part 433, Subpart F, trigger the return of the federal share to the federal government. However, if the excess DSH payments are redistributed by the state to other qualifying hospitals as an integral part of the audit process, and in accordance with a federally approved Medicaid state plan provision, the federal share is not required to be returned.

Mr. Hill's letter is attached hereto as Exhibit 5.

36.     If DSS were to adhere to the original independent audit applying FAQ No. 33, it runs the risk of lawsuit from one or more hospitals from which it would be recouping funds.  If it instructs its auditors to disregard FAQ No. 33, it runs the risk of losing federal funding.

## COUNT I

**(Declaratory Judgment that CMS is Enjoined from Implementing its Policy in FAQ No. 33)**

37.     Paragraphs 1 through 36 above are incorporated herein by reference.

38.     This Court has "ORDERED that Defendants are . . . ENJOINED from enforcing, applying, or implementing FAQ No. 33 pending further Order of this Court." *Texas Children's Hosp. v. Burwell*, No. 14-cv-02060, Doc. No. 19 (D.D.C. Dec. 29, 2014).

39. Defendants continue to enforce FAQ No. 33 with respect to Missouri's Medicaid program. CMS has warned Missouri that it may face a disallowance of federal funds for the State's Medicaid program if it does not comply with FAQ No. 33.

40. CMS's warning that Missouri must comply with FAQ No. 33 (or face a disallowance) violates the injunction in *Texas Children's*, and DSS is entitled to a declaration that the Defendants have been enjoined from enforcing, applying, or implementing FAQ No. 33 with respect to the State of Missouri's Medicaid program.

**REQUEST FOR RELIEF**

WHEREFORE, the Missouri Department of Social Services requests that this Court grant the following relief:

A. Declare that the Order in *Texas Children's Hosp. v. Burwell*, No. 14-cv-02060, Doc. No. 19 (D.D.C. Dec. 29, 2014) enjoins the Defendants from:

  i) enforcing the policy in FAQ No. 33 with respect to the State of Missouri's Medicaid program;

  ii) implementing the policy in FAQ No. 33 with respect to the State of Missouri's Medicaid program; and

  iii) applying the policy in FAQ No. 33 to the State of Missouri's Medicaid program;

B. Award DSS other such relief as may be just and proper;

C. Award DSS the costs of this action, including attorneys' fees; and

D. Retain jurisdiction over this action for such additional and supplemental relief as may be required to enforce the order and judgment.

Respectfully submitted,

/s/ Caroline M. Brown
Caroline M. Brown
DC Bar Number 438342
Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001
+1 202 662 6000

Attorney for Plaintiff
Missouri Department of Social Services